UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:19-cv-359-RJC

| | |
|---|---|
| TANYA J. WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| ANDREW M. SAUL, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** comes before the Court on Plaintiff's Motion for Summary Judgment, (Doc. No. 10), Plaintiff's Memorandum in Support, (Doc. No. 11), Defendant's Motion for Summary Judgment, (Doc. No. 12), and Defendant's Memorandum in Support, (Doc. No. 13).

I.   BACKGROUND

    A.   Procedural Background

Plaintiff Tanya J. Williams ("Plaintiff") seeks judicial review of Andrew M. Saul's ("Defendant" or "Commissioner") denial of her social security claim. (Doc. No. 1). On October 30, 2014, Plaintiff filed an application Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1383 et seq. (Doc. No. 11 at 1.) Plaintiff alleged an inability to work starting on March 1, 2014 due to lumbar spine degenerative disc disease (DDD), anxiety, diabetes, high blood pressure, and obesity. (Id.) The Administrative Law Judge ("ALJ") denied Plaintiff's application initially on February 5, 2018, but that decision was vacated

1

by the Appeals Council ("AC"). (Id.; Doc. No. 8-1 (Tr.) at 77-102.) The AC then denied Plaintiff's Claim at Step Five. (Id.; Tr. at 20–22.) This decision became the final decision of the Commissioner. (Tr. At 4–23.)

Plaintiff's Complaint seeking judicial review and a remand of her case was filed in this Court on December 30, 2019. (Doc. No. 1). Plaintiff's Motion for Summary Judgment, (Doc. No. 10), and Plaintiff's Memorandum in Support, (Doc. No. 11), were filed June 17, 2020; and Defendant's Motion for Summary Judgment, (Doc. No. 12), and Defendant's Memorandum in Support, (Doc. No. 13), were filed on June 30, 2020. The pending motions are ripe for disposition.

B.  Factual Background

The question before the AC was whether Plaintiff was disabled under Section 1614(a)(3)(A) of the SSA. (Tr. at 5.) To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the SSA.[1] Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). Plaintiff alleges that her disability began on March 1, 2014 due to physical and mental impairments. (Id. at 4.)

After reviewing Plaintiff's record and conducting a hearing, the AC found that Plaintiff did not suffer from a disability as defined in the SSA. (Id. at 22.) In reaching this conclusion, the AC used the five-step sequential evaluation process

---

[1] Under the SSA, 42 U.S.C. § 301 et seq., the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

established by the Social Security Administration for determining if a person is disabled. The Fourth Circuit has described the five-steps as follows:

> [The AC] asks whether the claimant: (1) worked during the purported period of disability; (2) has an impairment that is appropriately severe and meets the duration requirement; (3) has an impairment that meets or equals the requirements of a listed impairment and meets the duration requirement; (4) can return to her past relevant work; and (5) if not, can perform any other work in the national economy.

Radford v. Colvin, 734 F.3d 288, 290–91 (4th Cir. 2013) (paraphrasing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant has the burden of production and proof in the first four steps. Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015). However, at the fifth step, the Commissioner must prove that the claimant is able to perform other work in the national economy despite her limitations. See id.; see also 20 C.F.R. § 416.960(c)(2) (explaining that the Commissioner has the burden to prove at the fifth step "that other work exists in significant numbers in the national economy that [the claimant] can do").

In this case, the AC determined at the fifth step that Plaintiff was not disabled. (Tr. at 20–22.) In reaching this decision, the AC first concluded at steps one through three that Plaintiff was not employed, that Plaintiff suffered from severe physical impairments,[2] and that Plaintiff's impairments did not meet or equal any of the impairments listed in the Administration's regulations. (Tr. at 4–7.) Therefore, the AC examined the evidence of Plaintiff's impairments and made a finding as to

---

2 The severe impairments the AC determined Plaintiff suffered from were degenerative disc disease status post L4-S1 fusions, left lumbar radiculopathy, obesity, affective disorder (includes dysthymia), anxiety disorder, and somatoform disorder. (Doc. No. 8-1 at 7.)

3

Plaintiff's Residual Functional Capacity ("RFC"). In pertinent part, the ALJ found that Plaintiff:

> has the [RFC] to perform light work . . . except that standing and walking combined can be performed for four hours out of an eight hour workday, and sitting can be performed for six hours out of an eight-hour workday. The use of foot controls is limited to occasional on the left within the exertional level. The claimant requires a hand-held assistive device (such as a cane) to ambulate over narrow, slippery or erratically moving surfaces, or for ascending or descending slopes. The collateral arm can be used to lift and carry up to the exertional limit except when using stairs. A hand-held assistive device would not be necessary for standing at the workstation. She can never climb ladders, ropes and scaffolds. She can occasionally climb ramps and stairs, kneel, crouch and crawl. She can occasionally stoop to lift within the exertional level from the floor to the waist. The claimant can frequently stoop to lift within the exertional level from waist height and above. She can frequently balance. The claimant can occasionally be exposed to extreme cold, pulmonary irritants (such as fumes, smoke, odors, dust gases and poor ventilation) and hazards associated with unprotected heights and unprotected dangerous machinery. She can concentrated, persist and maintain pace sufficient to understand, remember and carry out simple, routine tasks in a low stress work environment (clamed as being free of fast-paced or team-dependent production requirements), involving simple work-related decisions, occasional independent judgment skills and occasional work place changes. She can perform jobs with only superficial interaction with the general public. The claimant can perform jobs where the work can be completed independently from co-workers; however, physical isolation is not required. She can respond appropriately to reasonable and customary supervision.

(Id. at 10.)

Having established Plaintiff's RFC, the AC concluded that Plaintiff could not perform her past work. (Tr. at 20.) However, the AC did determine that there are jobs in significant numbers in the national economy that Plaintiff can perform. (Id.) To make that determination, the ALJ relied on the testimony of a Vocational Expert ("VE"). The VE testified that Plaintiff could perform several jobs in the national economy including Checker I, Mail Clerk (non-postal), Shipper and Receiving

4

Weigher, Addresser, Document Preparer, and Egg Processor. (Id. at 21.) According to the DOT, all of these jobs involve "light work" or "sedentary work." The AC accepted the VE's testimony and concluded that Plaintiff's impairments did not prevent her from working; consequently, Plaintiff's application for Title XVI benefits was denied. (Id. at 20–23.)

## II. STANDARD OF REVIEW

The Court must decide whether substantial evidence supports the final decision of the Commissioner and whether the Commissioner fulfilled her lawful duty in her determination that Plaintiff was not disabled under the SSA. See 42 U.S.C. §§ 405(g), 1382(c).

The SSA, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The district court does not review a final decision of the Commissioner *de novo*. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). As the SSA provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, the Fourth Circuit noted that "substantial evidence" has been defined as being "more than a scintilla and [do]ing more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence

5

as a reasonable mind might accept as adequate to support a conclusion." 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence . . . .").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again or substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith, 795 F.2d at 345; Blalock, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

Although Plaintiff's application was denied at Step Five, Plaintiff challenges the decision at Step Three. Plaintiff alleges that the AC erred by failing to discuss Plaintiff's DDD against the criteria of Listing 1.04A, and did not evaluate the evidence as required by Radford v. Colvin, 734 F.3d 288 (4th Cir. 2013), opting instead to simply verbatim citing the Listing definitions followed by a statement that Ms. Williams did not meet them. (Doc. No. 11 at 2.) Plaintiff requests remand for further evaluation of her DDD at Step Three. (Id.)

Plaintiff contends that the AC's decision is not supported by substantial evidence because the ALJ failed to consider the criteria of Listing 1.04A with a

6

comparison of those criteria to the medical findings in the record. Plaintiff argues that an ALJ's decision must include a specific application of the relevant listing criteria to the record evidence; without comparing the criteria of the listing to the specific facts of the case, an ALJ's Step Three analysis is insufficient. (Doc. No. 11 at 4, citing Radford, 734 F.3d at 295). Plaintiff further argues that Listing 1.04A is met when a claimant suffers from a spinal disorder such as DDD that results in compression of a nerve root characterized by a number of factors that Plaintiff has provided evidence of fitting. (Doc. No. 11 at 4–5.) Plaintiff states that the medical record showed that Plaintiff qualified for this listing, including showing lumbar DDD, x-ray evidence of a disc protrusion impinging upon the thecal sac and the L5 nerve root, MRI evidence of spinal cord stenosis related to a disc protrusion, L5 radiculopathy following surgery, and other signs of nerve root compression including leg and muscle numbness and weakness. (Doc. No. 11 at 5–8, citing Tr. 8, 387, 405, 478, 487, 500–504, 508, 515, 526, 529, 531, 593, 603–604, 610, 627, 643, 649–650, 660, 706). Plaintiff argues that when an ALJ mentions medical signs that correspond to listing criteria, but fails to explain why the listing is not met, the case is unreviewable and should be remanded. (Doc. No. 11 at 9–10.)

The government argues in response that the AC correctly found Listing 1.04A inapplicable. (Doc. No. 13 at 9.) The government presents two arguments. First, the government argues that the AC found that Plaintiff did not have nerve root compression for a continuous twelve-month period, noting that the AC emphasized that Plaintiff showed significant improvement in pain following surgery, and that the

7

medical evidence did not demonstrate the necessary continuous twelve month nerve root compression. (Id. at 10–11.) Second, the government argues that Plaintiff lacks the other elements required by Listing 1.04A, including a positive suppine straight-leg raising test, and that such straight-leg raising occurred only while seated. (Doc. No. 13 at 12, citing Tr. 501, 504.)

"The Social Security Administration has promulgated regulations containing listings of physical and mental impairments which, if met, are conclusive on the issue of disability." Radford, 734 F.3d at 291 (quotation marks omitted). "Disability is conclusively established if a claimant's impairments meet all the criteria of a listing or are medically equivalent to a listing." Gore v. Berryhill, No. 7:15-cv-00231, 2017 U.S. Dist. LEXIS 34557, at *18 (E.D.N.C. Feb. 23, 2017), adopted by 2017 U.S. Dist. LEXIS 34283 (E.D.N.C. Mar. 10, 2017). "[T]o determine whether a claimant's impairments meet or equal a listed impairment, the ALJ must identify the relevant listed impairments and compare the listing criteria with the evidence of the claimant's symptoms." Coaxum v. Berryhill, No. 8:16-cv-01099, 2017 U.S. Dist. LEXIS 88134, at *37 (D.S.C. May 25, 2017). "Where there is ample evidence that a claimant's impairment meets or equals one of the listed impairments, an ALJ has a duty of identification of relevant listed impairments and comparison of symptoms to listing criteria." Flesher v. Colvin, No. 2:14-cv-30661, 2016 U.S. Dist. LEXIS 43085, at *10 (S.D. W. Va. Mar. 31, 2016) (quotation marks omitted), aff'd, 2017 U.S. App. LEXIS 18108 (4th Cir. Sept. 19, 2017). Without a discussion of the relevant listings and a comparison of the claimant's symptoms to the listing criteria, it is impossible

for the Court to determine whether substantial evidence supports the ALJ's conclusion. Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986).

Here, the AC considered whether the medical findings related to Plaintiff's DDD met the requirements of Listings 1.02 and 1.04. (Tr. At 7–8.) As to Listing 1.04, the AC first described the Listing's requirements and then stated simply: "[t]he record does not establish the presence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in inability to ambulate effectively. In addition, Listing 1.04 was considered in accordance with Acquiescence Ruling 14-1(4)." (Tr. At 8.) The relevant portion of the decision contains no further explanation of Listing 1.04's lack of applicability.

The AC's discussion of Listing 1.04 provides no analysis beyond a conclusory statement. The Fourth Circuit "found a substantially similar explanation deficient in Radford because it was 'devoid of reasoning' and rendered impossible the task of determining whether the ALJ's finding was supported by substantial evidence." Brown v. Colvin, 639 F. App'x 921, 923 (4th Cir. 2016) (remanding based on language that read: "The medical evidence of record does not establish the presence of objective findings that would meet or equal any impairment listed in the Listing of Impairments as found in Appendix 1, Subpart P of Regulations No. 4. This is consistent [with] the State Agency opinion considering Listing[ ] 4.04 (Ischemic Heart Disease)"). "While Brown is unpublished, it is nevertheless persuasive . . . . Here, there is no way for this Court to determine how the Listing analysis was made or the

9

basis for the conclusion that the Listing was not met." Nichols v. Colvin, No. 1:15CV797, 2017 WL 57813, at *7 (M.D.N.C. Jan. 5, 2017).

The government points to the medical record to argue that Plaintiff did not have nerve root compression for a continuous twelve-month period, based on x-rays and other medical evidence, and that Plaintiff's medical history did not include a supine positive straight-leg raising test. (Doc. No. 13 at 9–12.) Yet whether or not this argument ultimately turns out to be correct, the AC did not address or analyze it as required. "[I]n light of the evidence raised by Plaintiff that was not addressed by the ALJ, the Court concludes as in Brown that the medical evidence related to Plaintiff's back condition 'is not so one-sided that one could clearly decide, without analysis' that the Listing is not met." Nichols, 2017 WL 57813 at *7. Rather, the "failure to address any of the physical listings in this case, including particularly Listing [1.04], is [] more than a 'technical error,' and is instead a situation where 'the ALJ's failure to adequately explain his reasoning precludes this Court ... from undertaking a 'meaningful review.'" Dial v. Colvin, No. 1:16CV70, 2016 WL 6997502, at *6 (M.D.N.C. Nov. 30, 2016) (quoting Radford, 734 F.3d at 296).

Therefore, this matter must be remanded for further proceedings.

### IV. CONCLUSION

In sum, the Court finds that substantial evidence supports the ALJ's decision, and the ALJ applied the correct legal standards.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff's Motion for Summary Judgment, (Doc. No. 10), is **GRANTED**;

2. Defendant's Motion for Summary Judgment, (Doc. No. 12), is **DENIED**;

3. This matter is **REMANDED** for further proceedings consistent with this Order; and

4. The Clerk of Court is directed to close this case.

Signed: March 29, 2021

Robert J. Conrad, Jr.
United States District Judge